IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**RICK CUNEFARE**<br>            **Defendant.** | CRIMINAL NO.: 21-cr-319-EGS |

**GOVERNMENT'S CONSOLIDATED
MEMORANDUM IN AID OF SENTENCING
AND MOTION FOR DOWNWARD DEPARTURE**

The United States, by and through its undersigned counsel, respectfully submits this consolidated memorandum in aid of sentencing and motion for downward departure to aid the Court in fashioning appropriate sentences for defendants Rick Cunefare ("Cunefare") and Stacy Cabrera ("Cabrera"), who are set to be sentenced on July 29, 2022.[1]

Summary of Government's Recommendation as to Cunefare

On June 9, 2021, Cunefare pleaded guilty to one count of major fraud against the United States, in violation of 18 U.S.C. §§ 1031(a) and 2. As calculated by the United States Probation Office, the defendant's applicable total offense level is 22, criminal history Category I, which results in an advisory guideline range of 41 to 51 months. This calculation is consistent with the parties' agreement in the plea agreement. ECF No. 7. The offense level and guideline range do not, however, account for a downward departure for the defendant's substantial assistance to the government pursuant to U.S.S.G. § 5K1.1. As set forth below, the government recommends a 40%

---

[1] The investigation that led to the above-captioned case involves three related cases: United States v. Rick Cunefare, 21-cr-319 (D.D.C., April 23, 2021); United States v. Stacy Cabrera, 21-cr-182 (D.D.C., March 3, 2021) and United States v. Balfour Beatty Communities LLC (D.D.C., December 21, 2022). The government discusses these three cases in detail below. The government is filing this consolidated sentencing memorandum in United States v. Cunefare and United States v. Cabrera to contextualize the defendants' respective misconduct and aid the Court in fashioning appropriate sentences.

reduction in the total offense level, which results in an amended offense level of 13, and an amended guideline range of 12 to 18 months. The government recommends a sentence at the low end of this range.

Summary of the Government's Recommendation as to Cabrera

On April 21, 2021, Cabrera pleaded guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. As calculated by the United States Probation Office, the defendant's applicable total offense level is 20, criminal history Category I, which results in an advisory guideline range of 33 to 41 months. In Cabrera's plea agreement with the Government, ECF No. 6, the parties agreed to a total offense level of 19, criminal history category I, which results in an advisory guideline range of 30 to 37 months. The one-level difference results from probation applying a three-level enhancement under U.S.S.G. § 3B1.1, versus a two-level enhancement that the parties agreed to. As explained below, the government recommends that the Court adopt the guidelines calculation from the plea agreement (i.e., total offense level of 19, advisory guideline range of 30 to 37 months).

Regardless of which guidelines calculation the court adopts, neither offense level nor guideline range accounts for a downward departure for the defendant's substantial assistance to the government pursuant to U.S.S.G. § 5K1.1. The government recommends a 40% reduction in the total offense level, resulting in an amended offense level of 11, and an amended guideline range of 8 to 14 months. The government recommends a sentence at the low end of this guideline range.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

In approximately 2016, the government initiated an investigation into fraud by Balfour Beatty Communities LLC ("BBC"), one of the nation's largest providers of privatized military

housing to the U.S. Armed Forces. The investigation initially focused on two U.S. Air Force bases, but eventually expanded to a review of BBC-operated housing communities at military bases across the United States. The investigation largely concluded in 2021, and resulted in, among other things, Cunefare, Cabrera, and BBC pleading guilty to felony charges before this Court.

BBC pleaded guilty to engaging in a broad scheme to defraud the Air Force, Army, and Navy in connection incentive fees that it earned through its operation of privatized military housing communities at U.S. military bases. Cunefare's and Cabrera's involvement in the scheme was limited to defrauding the U.S. Air Force. The government provides the background below, which largely relates to the broader scheme to defraud, to contextualize Cunefare's and Cabrera's roles in the scheme.

### Background on Privatized Military Housing

The Military Housing Privatization Initiative ("MHPI") was a statutorily established program designed to attract private sector financing, expertise, and innovation to provide necessary housing for military servicemembers, their families, and other dependents faster and more efficiently than traditional military construction processes would allow. Put into effect via the National Defense Authorization Act for Fiscal Year 1996, Public Law 104-106 (110 Stat. 186, Section 2801), a goal of the MHPI was to provide military families access to safe, quality, affordable, well-maintained housing in a community where they would choose to live, while also allowing them the convenience of being near military bases and other institutions consistent with their duties. Branches of the U.S. Armed Forces, including the Air Force, Army, and Navy, used authority granted to them under the MHPI to enter into agreements with private real estate developers to develop, maintain, and operate housing for U.S. military members at military bases

around the United States.

### BBC's Role in Privatized Military Housing

Beginning in approximately 2003, BBC, through a predecessor entity, entered into agreements with branches of the U.S. Armed Forces to own, develop, and manage military housing communities at military installations across the country. BBC ultimately became one of the U.S. military's largest providers of privatized military housing, operating military housing communities at approximately 21 Air Force bases, 16 Army bases, and 18 Navy bases, in which tens of thousands of servicemembers and their families lived.

Part of the compensation that BBC received in connection with these military housing communities came in the form of fees that BBC was paid for the various phases of development and management of each housing community, from design and construction to ongoing community management and maintenance. BBC's fees for the ongoing property management and maintenance of its military housing communities generally consisted of (1) a base fee, paid to BBC monthly, and (2) a performance incentive fee (the "Performance Incentive Fee"), paid to BBC quarterly or semi-annually.

Performance Incentive Fees were only payable upon the approval of the relevant service branch. To obtain the service branches' approval, BBC was required to satisfy certain performance objectives that were set out in the agreements that governed the military housing projects (the "Performance Objectives"). For example, the Fee Management Plan for the "AMC West" Air Force housing project, which consisted of military housing communities at three Air Force bases, included approximately eight Performance Objectives that, if met, entitled BBC to 100% of the quarterly Performance Incentive Fee for the AMC West project.

The details of how BBC satisfied the Performance Objectives varied from housing project

to housing project, but Performance Objectives generally fell into four categories: (1) maintenance requests (e.g., to earn the Performance Incentive Fee, BBC had to respond to and/or complete maintenance requests within certain agreed time frames); (2) resident satisfaction (often measured by comment cards); (3) the timely completion of tasks, such as supplying documents and reports; and (4) a local commander's evaluation of BBC's performance.

To obtain Performance Incentive Fees, BBC was required to submit to the service branches documentation and a statement that it had satisfied the Performance Objectives, including the objectives related to maintenance and customer satisfaction described above. These submissions were material to the decision-making of the service branches, which relied on BBC's submissions in deciding whether to approve the payment of relevant Performance Incentive Fees. BBC's quarterly or semi-annual submissions to the service branches generally consisted of a written letter, as well as a report prepared using data from Yardi (a computer system that BBC used to track Performance Objectives and other data) and other sources (e.g., comment card metrics). All three service branches to which BBC submitted requests for Performance Incentive Fees were limited in their ability to independently verify the accuracy of BBC's data, and thus these service branches relied on the accuracy of the data that BBC submitted in evaluating whether BBC had met the Performance Objectives. Upon the service branches' approval of BBC's Performance Incentive Fee request letters and data, BBC was generally authorized to receive distributions from an account in which Performance Incentive Fee funds were set aside.

**Summary of BBC's Scheme to Defraud the U.S. Military**

From in or around 2013 to in or around 2019, in many quarters in which BBC did not legitimately meet Performance Objectives—primarily those related to maintenance and customer satisfaction—at various military housing projects, BBC, acting through its employees, including

Cunefare, Cabrera, and others, falsified information in Yardi and elsewhere to generate false reports for submission to service branches that made it appear as if BBC had met Performance Objectives. Specifically, BBC employees altered or manipulated data in Yardi and destroyed or falsified resident comment cards to falsely inflate Performance Objective metrics and, ultimately, to fraudulently induce the service branches to pay Performance Incentive Fees that BBC had not earned and to which BBC was not entitled.

On December 22, 2021, for its role in the scheme to defraud, BBC pleaded guilty to one count of major fraud against the United States in violation of 18 U.S.C. § 1031(a) and was sentenced to three years' probation, and ordered to pay criminal penalties totaling approximately $65,000,000. ECF No. 10.

### The Defendants' Roles in the Scheme to Defraud the U.S. Military

Cunefare was a Regional Property Manager for BBC from approximately 2013 to 2015. In this capacity, he oversaw the military housing communities that BBC developed, operated, and managed at Lackland Air Force Base ("AFB"), Travis AFB, Vandenberg AFB, Tinker AFB, and Fairchild AFB. Cunefare directly supervised the community managers at these communities, including Cabrera, who were the senior on-site BBC employees, directly responsible for the day-to-day management of each housing community. As part of his oversight duties, Cunefare was responsible for ensuring that the community managers supplied him with information regarding their satisfaction of the Performance Objectives.

In quarters in which BBC housing communities did not satisfy the Performance Objectives, Cunefare instructed Cabrera and other community managers to manipulate and falsify work order data in Yardi so that BBC's requests for Performance Incentive Fees would falsely reflect that

6

BBC had met Performance Objectives. This allowed BBC to obtain Performance Incentive Fees to which it was not entitled, and to reap the pecuniary benefits of the scheme.

Cabrera was the Community Manager for Lackland AFB from approximately 2013 to 2016. Over the course of her tenure, she reported to Cunefare and another regional property manager. Acting on instructions from Cunefare and at least one other regional property manager, when BBC's Lackland AFB property did not satisfy its quarterly Performance Objectives, Cabrera and others acting at her direction manipulated and falsified information in Yardi so that Quarterly Maintenance Reports would falsely reflect that BBC had met Performance Objectives. Cabrera submitted these reports to senior BBC managers, including Cunefare, understanding that they would be submitted to the Air Force in order to obtain Performance Incentive Fees for BBC.

### The Effects of BBC's Scheme on Servicemembers and their Families

In addition to overcharging the Department of Defense by millions of dollars, the scheme to defraud had wide-ranging negative effects on servicemembers and their families who resided in BBC's housing communities. BBC employees, including Cunefare and Cabrera, acting to benefit BBC, made false representations to all three service branches that maintenance issues raised by residents were being addressed in a timely manner, when in fact many were not. For example, on multiple occasions, BBC opened work orders in response to resident complaints about acute (*e.g.*, leaks) and long-term (*e.g.*, warped floors) maintenance issues, and then closed the work orders prior to completing the required work. On such occasions, BBC falsely represented to the service branches that the work had been completed in a sufficiently timely manner to qualify for Performance Incentive Fees. BBC's closing of work orders before the work was completed resulted in unnecessary delays in the resolution of maintenance issues to the detriment of residents. As a result of BBC's false representations, the service branches had an inaccurate view of the state

of BBC's military housing projects. As a result, the service branches were prevented from taking prompt action to protect servicemembers and hold BBC accountable.

Cunefare and Cabrera were each charged by criminal information on, respectively, April 23, 2021 and March 3, 2021, and pleaded guilty on, respectively, June 9, 2021, and April 21, 2021.

## II. SENTENCING GUIDELINES

### Cunefare

The United States Probation Office determined that the defendant's applicable total offense level is 22, criminal history category I, resulting in an advisory guideline range of 41 to 51 months. The parties agreed to the same total offense level in the plea agreement, and the government recommends that the Court adopt Probation's and the parties' calculation.

The parties and Probation agree that the defendant is entitled to a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. This is supported by his acceptance of responsibility through his allocution, his adherence to every provision of the plea agreement, and his conduct between entry of his plea and sentencing. Furthermore, he assisted authorities by providing timely notice of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. Therefore, the United States moves the Court, under U.S.S.G. § 3E1.1(b), to grant the defendant an additional one-level reduction in the offense level for acceptance of responsibility.

The Sentencing Guidelines thus recommend a sentence of between 41 and 51 months, before credit for substantial assistance.

**Cabrera**

The United States Probation Office determined that the defendant's applicable total offense level is 20, criminal history category I, resulting in an advisory guideline range of 41 to 51 months. In the plea agreement, ECF No. 6, the parties agreed to a total offense Level of 19, Criminal History Category I, resulting in an advisory guideline range of 30 to 37 months. Probation applied a three-level enhancement under U.S.S.G. § 3B1.1 based on the fact that the criminal activity involved five or more participants. While it is true that more than five individuals were involved in the broader scheme perpetrated by BBC and its employees, Cabrera personally supervised fewer than five individuals who knowingly participated in the scheme with her. Accordingly, the government does not believe that a three-level enhancement under § 3B1.1 is appropriate in this case. The government recommends the Court instead adopt the total offense level and advisory guideline range that the parties agreed to in the plea agreement (i.e., total offense level of 19 and guideline range of 30 to 37 months.

The parties and the Probation Officer agree that the defendant is entitled to a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. This is supported by Cabrera's acceptance of responsibility through her allocution, her adherence to every provision of the plea agreement, and her conduct between entry of her plea and sentencing. Furthermore, she assisted authorities by providing timely notice of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. Therefore, the United States moves the Court, under U.S.S.G. § 3E1.1(b), to grant the defendant an additional one-level reduction in the offense level for acceptance of responsibility.

The Sentencing Guidelines thus recommend a sentence of between 30 and 37 months, before credit for substantial assistance.

### III. RELEVANT SECTION 3553(a) FACTORS

The Sentencing Guidelines discussed above are advisory in nature. *United States v. Booker*, 543 U.S. 220 (2005). However, they are only one of the statutory factors that sentencing courts must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338 (2007). They serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. The other factors that 18 U.S.C. § 3553(a) identifies as relevant include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to provide restitution to any victims, § 3553(a)(7).

The most relevant of these factors are discussed below. On balance, the factors weigh in favor of a sentence near the low end the defendants' advisory guidelines ranges.

#### A. The Nature and Circumstances of the Offense

The offense in which the defendants participated was serious, but several aspects of their individual participation in the offense weigh in favor of leniency.

Housing is one of the most important benefits the United States confers on its servicemembers. Military housing is where troops come home at the end of each training day; it is where they return after long deployments in the service of their country; and it is where their families live, work, and grow while they are away. Every military family that has lived in military

10

housing understands the role that housing plays in the strength of our Armed Forces. Military housing communities provide the social backbone for life on base. They are where base schools, community centers, and bowling alleys are located. They are where troops' children trick-or-treat and display holiday decorations. High quality housing is an important factor in the readiness our armed forces because a soldier, airman, sailor, or marine who is worried about his or her family at home will not be as effective in the field.

BBC failed in its duty to provide high quality housing to servicemembers. Instead of adequately maintaining many of the housing communities that it built and operated, it falsified the paperwork to make it appear as if the communities were being maintained, and pocketed bonuses to which it was not entitled. Too often, BBC's actions left servicemembers and their families living in substandard conditions. The servicemembers had limited recourse because the service branches were deceived by BBC's lies into believing that the housing communities were being maintained.

BBC's scheme would not have worked but for the knowing and intentional involvement of employees like Cunefare and Cabrera, each of whom was responsible for overseeing a portion of the BBC properties impacted by the scheme. As a regional manager, Cunefare caused subordinates to generate falsified data that was ultimately supplied to the Air Force to obtain Performance Incentive Fees. As stated above, Cunefare was responsible for overseeing five of the 21 Air Force bases impacted by the fraud scheme. He directed community managers at these bases, who were subordinate to him, to supply him with maintenance numbers that satisfied the Performance Objectives so that BBC would earn Performance Incentive Fees for quarters that BBC was not entitled to the fees. His actions directly resulted in data falsification at multiple bases, including Lackland AFB, where Cabrera worked. For her part, Cabrera, acting on instructions from Cunefare and at least one other BBC regional property manager, personally falsified, and directed

subordinates to falsify, data, and supplied the falsified data to Cunefare, the other regional property manager, and other BBC employees, knowing that such data would be provided to the Air Force. Cunefare was directly responsible for approximately $2.5 million in fraudulent Performance Incentive Fees, and Cabrera was directly responsible for approximately $1 million of fraudulent fees.

On the other side of the equation, Cunefare and Cabrera neither orchestrated the fraud, nor acted alone in furthering it. The scheme was ongoing when the defendants' joined the company, and continued after their tenures ended. Indeed, the government's investigation implicated dozens of other BBC employees in the fraud scheme, from low-level maintenance personnel to senior executives. Defendants Cabrera and Cunefare fell somewhere in the middle of the hierarchy of BBC employees who were involved in the scheme to defraud: they knowingly participated in the scheme, but they were generally acting on the instructions of others. In addition, whereas the financial costs of the scheme were significant to U.S. taxpayers, the only benefit that Cunefare and Cabrera received for participating in the scheme was their continued employment with the company. The Performance Incentive Fees that BBC received flowed to company coffers, not individual employee accounts.

### B. The History and Characteristics of the Defendant

**Cunefare**

Cunefare has been arrested twice, but both occurred when he was very young, and neither arrest appears to be related to fraud. The government also notes that the defendant personally provides care to his mother, who has a number of serious medical conditions. Cunefare also has a young daughter whom he assists with school. His wife does not appear to be able to assist his daughter with schooling because of language difficulties. Given these responsibilities, a lengthy

period of incarceration could have significant collateral impacts on the well-being of his mother and young daughter. Finally, the government notes that the defendant is a veteran of the U.S. Navy and appears to recognize and understand that his actions went against his system of values.

### Cabrera

Cabrera has been arrested once, but the arrest occurred when she was very young and does not appear to be related to fraud. The government notes that Cabrera has a son with significant health issues. While her husband appears to be able to step in to provide for the child if she were incarcerated, the government recognizes the harm that prolonged separation from a parent can do to a child, especially one with special needs.

### C. Adequate Deterrence

The government has no concerns that Cunefare and Cabrera will reoffend, but believes that general deterrence in the field of Department of Defense DOD contracting is critical to safeguarding taxpayer dollars and protecting servicemembers from companies willing to cut corners, whether in providing housing or warplanes. Companies, which act through their employees, must be incentivized to implement rigorous compliance programs to deter and detect misconduct within their ranks, and be further incentivized to self-report misconduct when it occurs. The Court's sentence should be sufficient to deter future corporate and individual wrongdoers.

### D. 3553(a) Conclusion

BBC's criminal scheme was egregiously serious and harmful in that it involved stealing government funds through fraud and a callous disregard for the wellbeing of servicemembers and their families. Cunefare's and Cabrera's conduct in supporting the scheme was also serious, but they were only responsible for a portion of the scheme and the resulting harm. They did not benefit from it other than by keeping their jobs, and they generally acted upon the direction of others above

them. A lengthy period of incarceration would result in varying degrees of collateral consequences to innocent third parties. For these defendants, a felony conviction and short term of incarceration likely serves as sufficient specific deterrence; and a lengthy term is not necessary to serve as general deterrence given the specific circumstances of their offense, especially given that that Cabrera and Cunefare were low- and mid-level managers with minimal financial incentive to commit fraud. Their convictions will serve as deterrence to others in similar positions. Therefore, a sentence at the low end of the Guidelines advisory range for Cunefare and Cabrera is appropriate.

## IV.   MOTION FOR DOWNWARD DEPARTURE UNDER SECTION 5K1.1

The United States respectfully moves for a downward departure from the defendant's guideline range pursuant to Section 5K1.1 of the United States Sentencing Guidelines based on the defendant's substantial assistance to the government.

Section 5K1.1 authorizes the Court to depart from the Sentencing Guidelines, upon motion of the government, based on factors, including but not limited to: "(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; [and] (5) the timeliness of the defendant's assistance."

The defendants each provided substantial assistance to the government's ongoing investigation of BBC and individual wrongdoers. First, they participated in voluntary interviews with investigating agents, and later participated in proffer interviews with their attorneys. The defendants each implicated their supervisors and expressed a willingness to testify against them, and the company. They were truthful and provided information that helped the government

advance its investigation of BBC and individual wrongdoers. Although the government has not charged other individuals, its decision was not based on the defendants' lack of cooperation.

The defendants' respective decisions to accept responsibility for their roles in the scheme and plead guilty to felony offenses advanced the government's broader investigation and prosecution of the company. Most directly, their explanation of how more senior BBC employees directed them and others to falsify data and submit reports to the Air Force and other service branches without regard for accuracy provided evidentiary support for a scheme perpetrated by a broad range of BBC employees. This enabled the government to secure more restitution for military housing communities in which servicemembers and their families lived than it would have had it focused only on the bases that Cunefare and Cabrera were directly involved in. In addition, their guilty pleas belied any argument BBC might have made that it had not engaged (through its employees) in a scheme to defraud the armed services. Their cooperation was instrumental in securing a guilty plea from BBC, vindicating the rights of the U.S. servicemembers who were the victims of BBC's scheme, and repaying U.S. taxpayers. And, not only did the guilty plea address the harm caused by BBC's entire scheme, it has a powerful deterrent effect on all companies participating in base housing services. It also placed BBC itself under substantial obligations to remediate its compliance program and internal controls to significantly decrease the likelihood that the company will commit similar misconduct any time in the foreseeable future.

Here, the government submits that the defendants each merit a downward departure of approximately 40% from their respective total offense levels, resulting in an amended offense level of 13, and an amended guidelines range of 12 to 18 months for Cunefare, and an amended offense level of 11, and an amended guidelines range of 8 to 14 months for Cabrera.

For the reasons stated above, the government recommends a sentence at the low end of the defendants' respective amended guidelines ranges.

## V. CONCLUSION

For the foregoing reasons, the government respectfully moves this Court for a downward departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. The government submits that sentences at the low end of the applicable amended guidelines ranges are appropriate.

        Respectfully submitted,

        JOSEPH BEEMSTERBOER
        Acting Chief, Fraud Section
        Criminal Division
        United States Department of Justice

By:   */s/ Michael P. McCarthy*
        Michael P. McCarthy, D.C. Bar #1020231
        Siji Moore, NY Bar
        Trial Attorneys, Fraud Section
        Criminal Division
        United States Department of Justice
        1400 New York Avenue, N.W.
        Washington, D.C. 20530
        (202) 412-1514
        Michael.McCarthy2@usdoj.gov

## **CERTIFICATE OF SERVICE**

On June 6, 2022, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

*/s/ Michael P. McCarthy*
Michael P. McCarthy
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice
